## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**DEONTE SHAW**                                                    **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO.:** 3:26-cv-488-CWR-LGI

**HINDS COUNTY, MISSISSIPPI;**
**SHERIFF TYREE JONES, in His Individual Capacity**
**as Sheriff of Hinds County, Mississippi;**
**WENDELL M. FRANCE, SR. in His Individual Capacity**
**as Receiver to Operate Hinds County Detention Center; AND**
**JOHN AND JANE DOES 1 -100**                                    **DEFENDANTS**

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

### *Jury Trial Demanded*

1. This complaint is brought by Deonte Shaw (hereinafter, "Plaintiff"), by and through undersigned counsel, against Hinds County, Mississippi; Sheriff Tyree Jones, in his individual capacity as Sheriff of Hinds County, Mississippi; Wendell M. Frances, SR., in his individual capacity as Receiver to Operate the Hinds County Detention Center; and John and Jane Does 1-100 (hereinafter, collectively referred to as "Defendants").

### JURISDICTION AND VENUE

2. Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. § 1983 as well as the 8th and 14th Amendments to the United States Constitution.

3. Venue is appropriate in this Court as all acts and/or omissions occurred in Hinds County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

## PARTIES

4. Deone Shaw (hereinafter, "Plaintiff") was at all times material to this Complaint an adult incarcerated at the Hinds County Detention Center (hereinafter, "HCDC") in Raymond, Hinds County, Mississippi.  Substantial acts, omissions, and events that caused the Plaintiff's injuries took place in Hinds County, Mississippi.  At the time of the incident(s) giving rise to this Complaint, the Plaintiff was a 30-year-old citizen of the State of Mississippi and was incarcerated at HCDC on a warrant that was issued for violating drug court in Hinds County, Mississippi.  Plaintiff is an adult resident citizen of Hinds County, Mississippi.  Plaintiff brings this action individually against Hinds County, Mississippi; Sheriff Tyree Jones, in his individual capacity as Sheriff of Hinds County, Mississippi; Wendell M. Frances, SR., in his individual capacity as Receiver to Operate the Hinds County Detention Center; and John and Jane Does 1-100.

5. Defendant, Hinds County, Mississippi, (hereinafter, "Hinds County") is located within the Southern District of the United States District Court, Northern Division.  Hinds County, by and through the Office of the Hinds County Sheriff's Department, manages and operates the HCDC.  Hinds County has the responsibility for providing humane care and treatment consistent with all constitutional and American Correctional Association standards.  Hinds County officials and policymakers knew that the HCDC was understaffed with untrained officers as early as August 2013 when Dr. James Austin conducted his inspection of the jail.  Throughout the following decade, numerous teams of experts have continued to note the jail is not adequately staffed and that the jailers are not properly trained.  Defendant Hinds County is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Hinds County Chancery Court Clerk,

2

Eddie Jean Carr, who also serves as the Clerk of the Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Hinds County, Mississippi 39201.

6. Defendant Tyree Jones (hereinafter, "Sheriff Jones") was the duly elected Sheriff of Hinds County, Mississippi, during the incident(s) giving rise to this Complaint. Sheriff Jones was elected Sheriff for Hinds County and sworn into office on December 3, 2021, and re-elected as Sheriff in 2023. After being sworn into office in 2021, Sheriff Jones "immediately" met with HCDC administrators and the Board and "pledged his support" to improve the HCDC.[1] Sherrif Jones was the policy maker for the Hinds County Sheriff's Department, which includes the HCDC. Sheriff Jones knew years prior to this Complaint that the HCDC was understaffed with untrained officers. Sheriff Jones was on notice about the numerous problems at HCDC including but not limited to shortage of staff, untrained officers and guards, faulty cell doors which do not lock, and the inability to protect inmates from harm. Sheriff Jones was aware of the numerous hearings regarding the consent decree with the United States of American which was entered into on June 23, 2016.[2] Over the course of the next several years, independent expert jail consultants continued to note the HCDC was not adequately staffed, jailers were not trained, cell doors continued to be faulty, and inmates were not protected from harm. For example, in 2015, a summary of findings of the HCDC noted "the jail does not provide prisoners with reasonable safety and minimum levels of protection from violence by other prisoners and staff members . . . The jail also has a serious contraband problem. Ready prisoner access to weapons, cell phones, drugs,

---

[1] See *U.S. v. Hinds County*, et. al., Civ. No. 3:16-cv-489-CWR-RHWR, United States District Court for the Southern District of Mississippi Northern Division, DOC #105, filed 12/14/2021, page 2.

[2] See *U.S. v. Hinds County*, et al., Civ. No. 3:16-cv-489-CWR-RHWR

and other illicit materials contribute to the ongoing risk of harm to both prisoners and staff." Reports noted that the lack of adequate staffing and security exacerbated a serious contraband problem and the HCDC's contraband problem reflected a "broader problem of poor prisoner supervision." Previous litigation revealed that the HCDC staffed one (1) jailer per pod, which was deemed inadequate by past independent court-appointed experts. Sheriff Jones knew that HCDC was dangerously understaffed with untrained jailers for years prior to this incident, and it was therefore foreseeable that this would create a dangerous environment for inmates. Sheriff Jones's actions and inactions created a policy at the HCDC of understaffing the jail with untrained jailers and failing to protect inmates, like the Plaintiff, from harm. Accordingly, Sheriff Jones is sued in his individual capacity. Sheriff Jones may be served with process at his place of employment or residence.

7. Defendant Wendell M. France, Sr., was appointed by United States District Judge Carlton W. Reeves on July 29, 2022, as Receiver to operate the Hinds County Detention Center (HCDC) and to draft a "Plan of Action to achieve constitutional conditions of compliance with the Court's Orders."[3] Mr. France's operational control took effect January 1, 2023[4], and it is believed that Mr. France actually took control over the HCDC on or about October 1, 2025.[5] Upon information and belief, Mr. France was the Receiver who operated the Raymond Detention Center during the incident(s) giving rise to this Complaint.[6] Accordingly, Mr. France is sued in his individual capacity. Mr. France may be served with process at this place of employment or residence.

---

[3] *See U.S. v. Hinds County, et al.*, Civ. No. 3:16-cv-489-CWR-RHWR, United States District Court for the Southern District of Mississippi Northern Division, DOC #215, filed 10/31/2022.

[4] *Id.*

[5] *See U.S. v. Hinds County, et al.*, Civ. No. 3:16-cv-489-CWR-RHWR, United States District Court for the Southern District of Mississippi Northern Division, DOC #285, filed 09/11/2025, page 2.

[6] *Id.*

4

8. Plaintiff is ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and/or servants of the Hinds County Sheriff's Office and/or Defendants. Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and the Plaintiff's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## FACTS

9. On or about October 24, 2025, Plaintiff was pulled over and arrested in Jackson, Mississippi, on a bench warrant that had been issued by the Honorable Judge Winston Kidd for violating drug court in the Circuit Court of Hinds County, Mississippi. Plaintiff was held at the Hinds County Detention Center (HCDC). At all times material to this Complaint, Plaintiff was a detainee at the HCDC. As detailed below, on or about November 12 or 13, 2025, Plaintiff was assaulted and beaten by several inmates inside the HCDC in the C-Pod in C-4.

10. Despite a public records request on February 12, 2026, the Board Attorney for the Hinds County Board of Supervisors did not respond or produce records in compliance with the Freedom of Information Act Public Records Request, Mississippi Public Records Act § 25-61-1 *et seq.*

11. Also on February 12, 2026, a public records request (Request #26-402) was made to the Mississippi Bureau of Investigation (hereinafter, "MBI"). MBI responded via electronic mail that record request #26-402 has been closed because no records could be located.

12. The HCDC is comprised of three pods: A, B, and C. Each pod has one guard tower and four (4) housing units numbered 1, 2, 3, and 4. Historically, each housing unit had one floor officer assigned. A-Pod was closed in late 2023 due to a lack of security and a lack of condition.[7]

13. On or about November 12 or 13, 2025, unknown inmates assaulted and beat Plaintiff at the HCDC in the C-Pod in C-4. Plaintiff was found lying in his cell for an unknown amount of time. The assault was directly caused by Hinds County's policies of understaffing the HCDC with untrained guards, malfunctioning cell doors, and guards being compromised by inmates who are gang members. Specifically, inmates were able to enter Plaintiff's cell and brutally assault him due to the lack of staff to supervise and protect him from harm.

14. As a result of the assault and beating at the HCDC, Plaintiff was transferred to the University of Mississippi Medical Center (UMMC) in Jackson, Mississippi, via EMS and diagnosed with the following on November 13 and 14, 2025: Respiratory failure following trauma, lung bruise, brain injury, bleeding in the head, altered mental status, bleeding in the brain, and trauma.[8] Plaintiff was placed on a mechanically assisted ventilation from November 13, 2025, through November 20, 2025.[9]

15. UMMC medical notes state: "30 year old male brought in by Ground EMS from scene s/p suspected assault at prison. Per EMS, he was significant agitated with altered mental status.

---

[7] https://www.wlbt.com/2023/10/17/infamous-pod-raymond-detention-center-is-officially-closed/

[8] UMMC Medical Records – Patient Health Summary (Feb. 4, 2026).

[9] *Id.*

Upon arrival, he was minimally responsive with nonpurposeful movements and snoring respirations. He was hypertensive with SBP in the 200s and tachycardic in the 120s. Given progressive alteration and inability to protect airway, he was subsequently intubated for airway protection. Admitted to SICU. ***Found to have severe TBI, subarchnoid hemorrhage, C4/5 instability***. NSGY was consulted. He was extubated on 11/17. Noticeably agitated and copious secretions noted. His mental status slightly improved and he was TTF on 12/1. He is alert but remains agitated. Neurostorming medications were increased on 12/6. SLP cleared him for a soft diet on 12/9 and has been tolerating this well. He has been doing well on the floor and has reached maximum benefit of hospitalization. He is medically ready to be discharged."[10] (Emphasis added).

16. On December 10, 2025, Plaintiff was discharged from UMMC to the custody of HCSO.[11] UMMC records noted the list of all active problems/list all injuries at time of discharge, in addition to trauma being listed as the principal problem: respiratory failure following trauma, pulmonary contusion, traumatic brain injury, subarachnoid hemorrhage, neurostorming, hypertension, ventilator associated pneumonia, and dysphagia.[12]

17. During Plaintiff's stay at UMMC, he had a CT spine, MRI brain, bouts of sweating and agitation with heavy secretions, head CT, several episodes of agitation with flailing, intubated in the Emergency Department and the Surgical Intensive Care Unit (SICU), at times was not interactive or following commands.

18. The HCDC staff called Plaintiff's family on December 31, 2025, and stated they could pick Plaintiff up at the HCDC on January 1, 2026 - the family did not have to post a bond. The

---

[10] UMMC Medical Records- Discharge Summaries (Dec. 10, 2025)
[11] *Id.*
[12] *Id.*

HCDC staff told Plaintiff's family to bring a wheelchair because of Plaintiff's condition. The family arrived at the HCDC and saw Plaintiff sitting in a wheelchair in front of the HCDC.

19. Plaintiff has been and continues to remain under medical care.

20. Plaintiff requires a 24-hour caretaker and has a long recovery ahead of him. Plaintiff continues suffering from seizures and other health related issues.

21. Due to the Board Attorney for the Hinds County Board of Supervisors refusal to produce public records relative to Plaintiff's incident at the HCDC, it is currently unknown whether Plaintiff received timely and adequate access to medical care and treatment at HCDC. It is unknown whether Plaintiff received medical observation when he returned to the HCDC after being discharged from UMMC. Upon information and belief, Defendants denied Plaintiff his constitutional right to timely and adequate medical care and treatment.

22. Due to Defendants' actions and inactions, Plaintiff was severely beaten. As a result of the beating, Plaintiff suffered serious injury, including Traumatic Brain Injury (TBI) that could be permanent, and will need medical treatment for the foreseeable future, and potentially for the remainder of his life. The Plaintiff's only history of head trauma consists of the assaults that he suffered at the HCDC, giving rise to this Complaint.

## HINDS COUNTY DETENTION CENTER SUMMARY SINCE MAY 21, 2015

23. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 22 hereinabove.

24. Hinds County officials, including the Board of Supervisors and Sheriff Jones, have long been aware of the dangerous, violent, and poor conditions at the HCDC.

25. On May 21, 2015, the United States Department of Justice's Civil Rights Division (hereinafter, "DOJ") launched an investigation into HCDC and released its twenty-nine-

8

page report, pursuant to the Civil Rights of Institutionalized Person's Act (hereinafter, "CRIPA"), 42 U.S.C. § 1997. In summary, "[DOJ] conclude that Hinds County ("County") violates the Eighth and Fourteenth Amendments of the United States Constitution by (1) failing to provide conditions of confinement that offer prisoners reasonable safety and protection from violence, and (2) holding prisoners in the Jail beyond their court-ordered release dates."[13] *See* Report attached as Exhibit "A." The DOJ found that HCDC was chronically understaffed, the staff was not properly trained, and the facility was poorly designed. This meant that HCDC inmates faced serious harm from fellow inmates.

26. On June 23, 2016, the DOJ filed its Complaint against Hinds County in the U.S. District Court for the Southern District of Mississippi. *See* Complaint, attached as Exhibit "B." The DOJ alleged in its Complaint that Hinds County had violated the Eighth and Fourteenth Amendment rights of the HCDC inmates and failed to protect the inmates from violence by fellow inmates.

27. On June 23, 2016 - the same day that the DOJ filed the complaint - the DOJ and Hinds County filed a joint settlement motion referred to as the "Consent Decree". See *Joint Motion for Entry of Settlement Agreement* attached as Exhibit "C." The Consent Decree was meant to resolve the DOJ's allegations in its Complaint. Additionally, the Consent Decree would be monitored by a third-party monitor (hereinafter, "Monitor") – the Monitor would be selected and agreed upon by the parties. The Monitor would have full access to HCDC, would visit HCDC, and report the findings in writing. Hinds County would designate a full-time Compliance Coordinator to work with the Monitor. The court retained jurisdiction to enforce the Consent Decree at the request of the aggrieved party. The court

---

[13] U.S. Department of Justice, Civil Rights Division, letter dated May 21, 2015, page 1.

could order termination of the Consent Decree after the parties jointly stipulated that Hinds County had substantially complied with the Consent Decree for a period of two years.

28. On July 19, 2016, the court entered an order approving the Consent Decree. See *Order Approving the Settlement Agreement* attached as Exhibit "D."

29. On August 18, 2016, the court entered an order and granted the parties' joint motion to appoint Elizabeth Lisa Simpson as the Monitor. See *Joint Motion to Appoint Elizabeth Lisa Simpson as Monito* attached as Exhibits "E-F'"

30. On May 3, 2017, the Monitor filed her first monitoring report. See *Court-Appointed Monitor's First Monitoring Report* attached as Exhibit "G." The report states that progress had been made in a number of areas, but there were a number of critical areas of deficiency that had an impact on the inmates' health and safety, such as the overarching problem of HCDC's inability to hire and retain qualified deputies. Hinds County could not be in compliance with the Consent Decree until there were enough qualified deputies staffing the required positions.

31. On August 23, 2017, the Monitor filed her second monitoring report. See *Court-Appointed Monitor's Second Monitoring Report* attached as Exhibit "H." The report states that the most critical issue at HCDC is the lack of staff. Another area of concern is the inmates' safety along with protecting inmates from violence committed by fellow inmates. The Monitor reported that Hinds County must develop and implement policies and procedures at HCDC so that inmates could be in a safe and secure environment. Even though a HCDC Policies and Procedures Manual was issued in April 2017, it failed to address the areas of concern found in the Consent Decree.

32. On December 11, 2017, the Monitor filed her third monitoring report. See *Court-Appointed Monitor's Third Monitoring Report* attached as Exhibit "I." HCDC building maintenance was a major issue of concern. For example, two out of the three pod security doors leading to the central corridor could not be closed. Additionally, HCDC's basic security measures continued to be ignored. For example, the interlocking vestibule doors were routinely overridden throughout HCDC.

33. On April 18, 2018, the Monitor filed her fourth monitoring report. See *Court-Appointed Monitor's Fourth Monitoring Report* attached as Exhibit "J." The lack of staff was the most significant problem at HCDC. The HCDC Policies and Procedures Manual was still a work in progress. HCDC building maintenance continued to be a problem with two of the three doors that separate the main corridor from the three pods were not properly functioning. The Monitor stated that Hinds County must take reasonable measures to provide inmates with a safe and secure place, which is consistent with constitutional standards. The Monitor stated that doing such will protect inmates from violence committed by fellow inmates.

34. The Monitor also filed the following monitoring reports:

    a. On August 1, 2018, the fifth monitoring report was filed.

    b. On November 15, 2018, the sixth monitoring report was filed.

    c. On March 5, 2019, the seventh monitoring report was filed.

    d. On June 27, 2019, the eighth monitoring report was filed.

    e. On November 13, 2019, the ninth monitoring report was filed.

    f. On March 26, 2020, the tenth monitoring report was filed.

    g. On August 4, 2020, the eleventh monitoring report was filed.

    h.  On December 4, 2020, the twelfth monitoring report was filed.

    i.  On April 2, 2021, the thirteenth monitoring report was filed.

    j.  On July 27, 2021, the fourteenth monitoring report was filed.

35. On October 28, 2021, the Monitor filed her Interim Report to the Court. See *Court-Appointed Monitor's Interim Report to the Court* attached as Exhibit "K." The Monitor was alarmed about the six deaths at HCDC during the 2021 calendar year. Furthermore, the deaths raised serious concerns because of Hinds County's lack of compliance. The Monitor had raised concerns in previous monitoring reports about ongoing problems at HCDC that present life-threatening safety issues, such as the lack of field training program for new officers, housing inmates in units where cell doors do not lock, and the poor and inaccurate reporting by the HCDC employees.

36. On November 24, 2021, the Monitor filed her fifteenth monitoring report.

37. On January 21, 2022, Hinds County moved to modify or terminate the Consent Decree – it invoked the termination provisions of the Prison Litigation Reform Act.

38. On February 4, 2022, the court entered its First Order of Contempt regarding HCDC. See *First Order of Contempt* attached as Exhibit "L." According to the Order, Hinds County promised in 2016 and in 2020 to fix the problems at HCDC, but failed to do so. As of the filing of the First Order of Contempt, Hinds County had not corrected many of the problems at HCDC – there were more than two dozen provisions in which Hinds County was non-compliant with a court order. As a result, Hinds County was held in contempt of court. The First Order of Contempt referenced Sheriff Jones being sworn into office as the Hinds County Sheriff in December 2021.

39. From February 14, 2022, through March 1, 2022, the court held evidentiary hearings regarding Hinds County's motion to modify or terminate the Consent Decree.

40. On March 23, 2022, the court entered its Second Order of Contempt – this contempt pertaining to A-Pod - regarding HCDC.  See *Second Order of Contempt* attached as Exhibit "M."   The court said that Hinds County's compliance with the Consent Decree had been elusive.

41. On April 5, 2022, the Monitor filed her sixteenth monitoring report.

42. On April 13, 2022, the court issued its Order Amending Consent Decree.  The court granted in part and denied in part Hinds County's motion to terminate the consent decree under the Prison Litigation Reform Act.

43. July 1, 2022, was the deadline for Hinds County to purge itself of contempt.

44. On July 19, 2022, the court held a final mitigation hearing and on July 29, 2022, the court denied Hinds County's motion for reconsideration and noted that a receiver needed to be appointed.

45. On August 11, 2022, the Monitor filed her seventeenth monitoring report.

46. On October 31, 2022, the court issued an Order Appointing Receiver.  See *Order Appointing Receiver* attached as Exhibit "N."  Wendell M. France, Sr., was appointed to serve as the receiver of HCDC and to oversee its operations.

47. On November 1, 2022, Hinds County filed an interlocutory appeal with the United States Court of Appeal for the Fifth Circuit.

48. On December 12, 2022, the Monitor filed her eighteenth monitoring report.

49. On October 31, 2024, the United States Court of Appeals for the Fifth Circuit issued its opinion, finding that some constitutional violations remained current and ongoing at

HCDC and concluded that the District Court did not err by declining to completely terminate the Consent Decree. Furthermore, the Fifth Circuit agreed that appointing a receiver was an appropriate sanction, but the District Court needed to narrow the scope of receivership, specifically relating to the receivership's authority over the financial matters. The case was remanded for the District Court to reconsider the receivership's scope.

50. On June 24, 2024, the Monitor filed her nineteenth monitoring report.

51. On June 27, 2025, the court issued orders for the 2025 Injunction, the 2025 Scope of the Receivership, and the Receiver's Access. See *Order Appointing Receiver* attached as Exhibit "O." The Receiver's operational control over HCDC would take effect October 1, 2025.

   a. The 2025 Injunction Order addresses incident reporting and review, investigations, policy and procedure review, emergent conditions, and other matters. Under the emergent conditions, Hinds County must notify the Monitor and the United States of any prisoner's injury requiring hospitalization within 24 hours of learning of the event.

   b. The Order on Receiver's Duties states that the Receiver shall be in charge of the day-to-day oversight of HCDC. Additionally, by August 1, 2025, the Receiver shall develop a Plan of Action designed for HCDC to be brought into compliance with constitutional standards and to consult with the Sheriff about remedies needed to address constitutional deficiencies.

   c. In the PLRA (Prison Litigation Reform Act) Analysis, the Court states that Hinds County had repeated opportunities to bring HCDC into compliance with constitutional standards but failed to do so. Additionally, Hinds County failed to

properly manage HCDC operations and failed to protect detainees from harm. Furthermore, Hinds County failed to provide adequate staffing and supervision at HCDC.

52. As a result of Defendants' consistent failure to adequately staff HCDC, adequately train and supervise staff, and failure to protect inmates at HCDC from harm, the Defendants created a facility with unconstitutional conditions of confinement. These conditions resulted in Plaintiff's assault and traumatic brain injury, among other significant injuries.

### 1983 CAUSES OF ACTION; EIGHTH AND FOURTEENTH AMENDMENTS VIOLATION; PROTECTION FROM HARM AND DANGEROUS CONDITIONS OF CONFINEMENT

53. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 52 hereinabove. Plaintiff incorporates herein all attached Exhibits A-O.

54. Hinds County, acting by and through its elected and appointed officials; Sheriff Jones; and Mr. France acted with deliberate indifference in the allegations listed above.

55. Defendants established customs, policies and procedures which directly and proximately caused the deprivation of Plaintiff's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of Plaintiff and other inmates housed at HCDC. As a result of these policies, Defendants failed to protect Plaintiff and created unconstitutional conditions of confinement.

56. Such unwritten policies, customs, and practices include, but are not limited to the following:

   a. Deficient, inadequate, and improper methods for training, overseeing, and disciplining corrections officers;

15

b. Deficient, inadequate, and improper protocols and procedures in the vetting, selection, training, oversight, and disciplinary management of officers who engage in, tolerate, or employ excessive force against inmates, including Plaintiff, in violation of their constitutional rights;

c. Deficient, inadequate, and improper protocols, policies, and procedures governing the investigation of officer misconduct, whether initiated through inmate complaints or through internally generated reports or inquiries;

d. Deficient, inadequate, and improper protocols, policies, and procedures for identifying and addressing officers who require retraining, corrective intervention, reassignment, or other non-disciplinary measures, through a proactive or early intervention system designed to safeguard the rights of inmates;

e. Officers permitting and failing to prevent altercations between inmates;

f. Failure to ensure the safety and protection of inmates from harm;

g. Failure to intervene and prevent violent incidents despite prior knowledge or warning by Hinds County employees;

h. Failure to properly assess and classify inmates upon intake or as circumstances required;

i. Failure to establish and maintain an adequate protective custody system for vulnerable inmates;

j. Operating a detention facility with insufficient security measures, including the failure to ensure cell doors were properly secured and knowingly permitting inmates access to materials that were fashioned into improvised weapons known as "shanks";

16

k.  Failure to adequately address and curtail the smuggling of contraband into the facility;

l.  Persistent and systemic understaffing of the jail, coupled with the hiring of corrections personnel who lacked adequate training or meaningful supervision;

m.  Failure to conduct routine shakedowns aimed at locating and recovering contraband from inmates and housing areas; and

n.  Failure to perform regular safety inspections within housing units, or to ensure that corrections officers were properly assigned to and present within those units.

57. By demonstrating a deliberate and conscious disregard for the significant risk of harm to which Plaintiff was exposed as a direct consequence of the policies and practices of Hinds County described herein, which ultimately resulted in Plaintiff being physically assaulted by fellow inmates, and by broadly failing to take reasonable measures to ensure Plaintiff's safety and protection from harm, the Defendants deprived Plaintiff of the constitutionally protected right to be free from cruel and unusual punishment, as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

## ISOLATED INCIDENTS OF CONDUCT OR FAILURE TO ACT

58. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 57 hereinabove. Plaintiff incorporates herein all attached Exhibits A-O.

59. As stated herein and demonstrated in Exhibits A-O attached hereto, Defendants operated and administered HCDC in a manner that resulted in the widespread and systemic violation of inmates' constitutional rights at every level and in every regard. Plaintiff was compelled to reside within this facility and suffer the consequences of both the actions and failures to act of its officials, as well as those of the corrections officers and jail personnel who carried

out HCDC's established policies, customs, and practices under color of law, all while exhibiting a reckless and intentional disregard for Plaintiff's rights as secured and guaranteed by the Constitution and laws of the United States.

60. Defendants as well as jailers and jail personnel acting in accordance with HCDC's established policies, practices, and customs, imposed upon inmates conditions of confinement so severely deficient in numerous respects that the facility was rendered wholly unsuitable and unfit for the housing of human beings. The cumulative effect of these actions constituted the infliction of punishment upon each inmate who was compelled to reside within the facility, including the Plaintiff. The latest incident, as of this filing, at HCDC happened on or about July 3, 2026, when HCDC inmate Mielun Butler was found unresponsive in his cell after being severely beaten by fellow inmates and was later pronounced deceased at Merit Health – Sheriff Jones even confirmed that a video circulating on social media showed Butler being beaten. See *Hinds County Sheriff to Address Detention Center Death by WAPT.com* attached as Exhibit "P."

61. Defendants established, enforced, and permitted numerous additional policies, practices, and customs that deprived most, if not all, inmates, including Plaintiff, of their right to be safeguarded from harm and their right to be free from punishment during their pretrial detention. These encompassed policies, customs, and practices, whether formally documented or unwritten, that were expressly announced, authorized, and/or carried out by either Sheriff Jones or Mr. Frances in his capacity as the final policymaker of the HCDC. They further included policies, practices, and customs which, though potentially never formally adopted, had become so pervasive, firmly established, and deeply entrenched in

18

their application, use, and acceptance throughout the facility as to constitute the de facto policies of the Defendants.

62. HCDC policies, practices, and customs described in the preceding paragraph, along with any additional policies, practices, and customs that may be revealed through the course of this litigation, gave rise to numerous, repeated, widespread, and ongoing violations of inmates' rights to be protected from harm as guaranteed under both the Eighth and Fourteenth Amendments at HCDC. As a direct result of Defendants' unconstitutional policies, practices, and customs, Plaintiff suffered a savage and violent assault at the hands of fellow inmates.

63. HCDC officers, jailers, and jail personnel, including the Doe Defendants, either acted or failed to act in conformity with the official policies, customs, and practices established by Defendants, or did so at the direction of and with the express approval of these officials, thereby depriving Plaintiff of his rights as described herein. The aforementioned policies, practices, and customs served as the driving force behind both the actions and omissions of HCDC officers, jailers, and jail personnel, who carried out their duties with a deliberate and conscious disregard for the rights, welfare, medical needs, and other constitutional protections to which Plaintiff was entitled.

64. The violation of Plaintiff's rights by Defendants, as detailed throughout this pleading, directly and proximately resulted in Plaintiff sustaining severe and permanent physical and psychological injuries (i.e. TBI). Consequently, Plaintiff endured intense and debilitating physical pain, as well as profound and extraordinary mental and emotional suffering and anguish.

19

65. Plaintiff seeks to recover all compensatory damages to which he is lawfully entitled. Plaintiff further seeks the recovery of punitive damages from Defendants Sheriff Jones, Wendell M. France, Sr., and John and Jane Does 1 -100 (all in their individual capacities) for the conduct in callous and reckless disregard for the rights, welfare, and needs of the Plaintiff.

## **RATIFICATION**

66. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 65 hereinabove. Plaintiff incorporates herein all attached Exhibits A-P.

67. Hinds County, its policymakers, and specifically Defendants Sheriff Jones, Wendell M. France, Sr., and John and Jane Does 1 -100 were informed and made aware of Plaintiff's beating at HCDC and hospitalization. Hinds County, acting by and through its policymakers, and specifically Sheriff Jones and Mr. France, disregarded and ignored evidence of a pervasive and widespread failure to adhere to the policies and procedures designed and intended for the protection of inmates, including Plaintiff, as well as systemic deficiencies that resulted in the violation of Plaintiff's constitutional rights. Upon information and belief, not a single officer, supervisor, or any other individual was subjected to disciplinary action, considered for discipline, or even required to undergo retraining on the policies and procedures established for the protection of inmates. Rather than taking corrective action, the policymakers endorsed and sanctioned the conduct of the corrections officers, thereby adopting and approving those actions as their own.

68. Through these acts and omissions of ratification, Hinds County's policymakers demonstrated a deliberate and conscious indifference to the constitutional rights of the

Plaintiff as set forth herein. Hinds County endorsed and approved the actions of its employees and is therefore responsible and liable for the injuries sustained by the Plaintiff.

## COMPENSATORY AND PUNITIVE DAMAGES

69. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 68 hereinabove. Plaintiff incorporates herein all attached Exhibits A-P.

70. Plaintiff seeks to recover all compensatory damages to which he is lawfully entitled.

71. Plaintiff further seeks the recovery of punitive damages from Defendants, each sued in their individual capacities, based upon their conduct reflecting a callous and reckless disregard for the rights, welfare, and needs of Plaintiff. Defendants acted with complete and total disregard for the safety and well-being of the Plaintiff through the conduct previously described herein. The actions of Defendants Sheriff Jones, Wendell M. France, Sr., and John and Jane Does 1 -100 each acting in their individual capacities, rise to a level that warrants the imposition of punitive damages as a means of deterring similar misconduct in the future.

## RESERVATION OF RIGHTS

72. Plaintiff reserves the right to assert additional claims as may be appropriate following further investigation and discovery.

## DEMAND FOR A JURY TRIAL

73. Pursuant to Federal Rules of Civil Procedure, Plaintiff demands that this action be tried before a jury.

21

## PRAYER FOR RELIEF

74. **WHEREFORE, PREMISES CONSIDERED,** Plaintiff sues and demands judgment from Defendants and requests this Court to grant relief as follows following a jury trial of this matter:

   a. Compensatory damages of, from, and against Defendants, in amount to be determined by the trier of fact.

   b. Punitive damages of, from, and against Defendants Sheriff Jones, Wendell M. France, Sr., and John and Jane Does 1 -100 in an amount to be determined by the trier of fact.

   c. Incidental damages in an amount to be determined by the trier of fact.

   d. Injunctive relief.

   e. Payment of medical expenses.

   f. Reasonable attorney's fees and all costs of this court.

   g. Pre-judgment and post-judgment interest as allowed by law.

   h. An award of taxable costs.

   i. Any and all such further relief as the Court and the jury deem just and proper.


**RESPECTFULLY SUBMITTED,** this the 7th day of July, 2026.


                                        **DEONTE SHAW, PLAINTIFF**



                                        BY:/s/ JAD JAMAL KHALAF
                                            JAD JAMAL KHALAF
                                            Attorney for Plaintiff

ATTORNEYS FOR PLAINTIFF:

JAD JAMAL KHALAF (MB# 104995)
AMMIE T. NGUYEN (MB# 104936)
KHALAF & NGUYEN, PLLC
Physical: 500 N. State Street
          Jackson, Mississippi 39201
Mailing:  Post Office Box 320067
          Flowood, Mississippi 39232
Telephone: (601) 688-8888
Facsimile:  (844) 350-8299
Electronic Mail: Jad@601Attorney.com
Electronic Mail: Ammie@601Attorney.com